Marlow, Appellant, *v.* The Goodyear Tire & Rubber Co., Appellee, et al.

[Cite as Marlow v. Goodyear Tire & Rubber Co., 10 Ohio St. 2d 18.]

(No. 40434—Decided March 29, 1967.)

*Mr. Richard A. Nye* and *Mr. John R. Barrett,* for appellant.

*Mr. Walter E. deBruin,* for appellee.

SCHNEIDER, J. We can well appreciate the appellee's vigorous support of the reasoning of the Court of Appeals. If negligence of an employer is to cast the balance in favor of coverage under the Workmen's Compensation Act, he will have the best of both worlds. When an injury is occasioned by his default, he is shielded from heavy potential liability at common law. When, on the other hand, an injury occurs in the absence of his failure of a common-law duty, his experience rate is unaffected. We cannot approve this novel doctrine and, therefore, reverse.

Perhaps it deserves repeating here that the adoption of the Workmen's Compensation Act was not merely to compensate injuries for which an employer would otherwise be liable

at common law. The unavailability of the defenses of contributory negligence, assumption of the risk, and the fellow-servant doctrine are indicative of its broad purpose.

The source of the rule of this case as pronounced in the syllabus can be traced directly to *DeCamp* v. *Youngstown Municipal Ry. Co.*, 110 Ohio St. 376, one of the early "zone of employment" cases, although that phrase was not given expression until *Industrial Commission* v. *Barber*, 117 Ohio St. 373.

In the retrospect of over 40 years, the difficulties of the first two "zone" cases seem minimal. *Industrial Commission* v. *Pora*, 100 Ohio St. 218 (compensation allowed for injury during working hours and in the plant caused by assault as a result of argument over possession of an implement used in the business), and *Industrial Commission* v. *Weigandt*, 102 Ohio St. 1 (compensation allowed for injury caused by file accidentally thrown as the result of a friendly scuffle between fellow employees in the plant and near the place of duty but immediately prior to the commencement of work). In the third case, *Conrad* v. *Youghiogheny & Ohio Coal Co.*, 107 Ohio St. 387, compensation was denied for an injury occurring after the regular hours of work while the injured employee was riding one of the employer's cars away from the premises, which he was permitted, but not required, to do. *Conrad* is not referred to in *DeCamp*, but its force would clearly seem to have been diminished, if not extinguished, by that and other later cases.

*DeCamp* held that the injury of an employee of the street railway company occurring at a regular car stop on the company premises at which he usually alighted and did, in fact, alight on the day in question on his way to work in the car barns was in the course of his employment because his contract of hire included both wages and transportation to and from work. The difference between free transportation on the facilities of the employer and the privilege of parking and storing an employee's private means of transportation for a nominal fee on premises owned and maintained by the employer conveniently to the place of work, would seem to be insubstantial. In neither situation is the employee pursuing the will of, or controlled by, the employer. He is availing himself of a privilege rather than obeying a duty.

On its facts, *Industrial Commission* v. *Barber, supra* (117 Ohio St. 373) (employee covered by workmen's compensation although struck, on his way to work, by an automobile of fellow employee 20 to 40 feet outside of employer's enclosure, on a private street under employer's control, that street affording the sole access to the place of work), adds further growth to the rule of this case. However, in an effort to distinguish that case from *Conrad*, the court rested its decision on the lack of free choice of access to the actual place of work. The point appears to be illogical. If an employer provides two accesses and the employee has his choice, an injury on either may not be compensable because the other was available for use.

In any event, that point was ignored in *Industrial Commission* v. *Henry*, 124 Ohio St. 616, the first paragraph of the syllabus of which summarizes the facts:

"Where the claimant's decedent had entered upon his employment in the early morning hours, had left the premises of the employer to get his breakfast at a restaurant, in accordance with a custom acquiesced in by the employer, and, while returning to the premises of the employer by a direct and necessary route along a public thoroughfare, was struck by a train running upon the tracks of a railroad so immediately adjacent to the premises of the employer that the only way of ingress and egress toward the restaurant was one of hazard, the accident arose out of and in the course of decedent's employment."

Four months later, the rule reached full development when *Kasari* v. *Industrial Commission*, 125 Ohio St. 410, was decided, the syllabus of which reads:

"1. An employee, entering the premises of his employer to begin the discharge of the duties of his employment but who has not yet reached the place where his service is to be rendered, is discharging a duty to his employer which is a necessary incident to his day's work.

"2. Traversing the zone between the entrance of the employer's premises and the plant where an employee is employed, is one of the hazards of the employment.

"3. The negligence of an employer is not a necessary element of recovery by an employee out of the Workmen's Compensation Fund, neither will the contributory negligence of the

employee, not amounting to a purposely self-inflicted injury, defeat such recovery.''

In *Gregory* v. *Industrial Commission*, 129 Ohio St. 365, a nonunion employee of a mine, who was attacked and beaten by union sympathizers from nearby mines while proceeding to work on his employer's premises some 200 yards from the place of his duties, was held to be within the zone of employment and the assault to be a hazard thereof.

Subsequently, in *Merz* v. *Industrial Commission*, 134 Ohio St. 36, the court definitively described the zone of employment as ''the place of employment and the areas thereabout, including the means of ingress thereto *and egress therefrom*, under control of the employer.'' (Emphasis supplied.)

When Marlow was injured, he was in that zone and his injury was proximately caused by a natural hazard of the zone. It was not self-inflicted or a result of an act of nature or of an occurrence inconsistent with his employment, its activities, conditions or environments. Cf. the following cases in which compensation was denied: *Eagle* v. *Industrial Commission*, 146 Ohio St. 1 (employee returning to store from an outside call, stopped for lunch); *Stevens* v. *Industrial Commission*, 145 Ohio St. 198 (employee miles from the place of employment without any evidence to show purpose of the trip); *Merz* v. *Industrial Commission, supra* (134 Ohio St. 36) (''open-shop'' miner killed by son-in-law, not a fellow employee, but a union sympathizer, one and one-half miles from place of employment); *Highway Oil Co.* v. *State, ex rel. Bricker*, 130 Ohio St. 175 (filling station attendant injured by accidental discharge of firearms brought to station for self-protection without knowledge or consent of employer); *Industrial Commission* v. *Gintert*, 128 Ohio St. 129 (teacher carrying homework, injured on the way to school building); *Industrial Commission* v. *Bankes*, 127 Ohio St. 517 (horseplay initiated by the injured employee); *Industrial Commission* v. *Baker*, 127 Ohio St. 345 (employee killed by train on the way to work but miles from place of employment); *Industrial Commission* v. *Lewis*, 125 Ohio St. 296 (claimant, as a bill collector, had no fixed place of employment, and was in a place remote from the pursuit of his employment when injured); *Grabler Mfg. Co.* v. *Wrobel*, 125 Ohio St. 265 (sand shoveler collapsed from car-

diac condition, not from "a hazard of the business or service in which he was engaged"); *Industrial Commission v. Heil,* 123 Ohio St. 604 (transportation costs between home and work were paid by employer, and claimant injured on highway before reaching private alley leading to plant); *Industrial Commission v. Ahern,* 119 Ohio St. 41 (store employee injured while making personal purchase in part of store away from place of duty, as per custom and acquiescence of employer); *Slanina v. Industrial Commission,* 117 Ohio St. 329 (delivery employee killed on route when tornado blew telephone pole onto his vehicle).

Finally, comment should be directed to at least two unfortunate utterances which recur in the reports and which serve more to confuse than to clarify. The first is found in the third paragraph of the syllabus in *Industrial Commission v. Lewis, supra* (125 Ohio St. 296):

"Compensation from such fund is authorized only for an injury sustained by the employee in the performance of some act or in the discharge of some duty in the service of his employer." Although wholly accurate as applied to the facts of that case, as a general proposition it would require us to overrule *Gregory, Kasari, Henry, Barber* and *DeCamp, supra,* which we are not disposed at this time to do.

The second imprecise statement appears as early as the syllabus of *Slanina v. Industrial Commission, supra* (117 Ohio St. 329), to the effect that an injured employee may not be compensated "where his duties do not expose him to a special or peculiar danger * * * greater than [to] other persons in the community." In various forms, with "hazards" substituted for "danger," the statement appears in many subsequent cases, including *Barber, supra.* If it is a rule of law requiring denial of compensation, the same cases referred to in the foregoing paragraph are adversely affected. Surely, assaults, railroads, automobiles and streetcars are hazards as peculiar to the general public as they are to any employment, unless bodily contact or the use of any of such conveyances is *required* by the employment, which was not involved in any of those cases.

Although the phrase was again employed in *Walborn v. General Fireproofing Co.,* 147 Ohio St. 507 (coverage denied employee who slipped and fell in employer's parking lot blanket-

ed by heavy snowfall), upon which appellee relies, it was unnecessary to the decision in that case. All that was required was a recognition that a heavy snow is no more a hazard of the zone of employment than a tornado (*Slanina* v. *Industrial Commission, supra* [117 Ohio St. 329]), unless the act of nature operates "upon the property and the facilities of the industry, and the injury results from the fact that the hazards of the employment are made active by the forces of nature." *Industrial Commission* v. *Hampton*, 123 Ohio St. 500 (employee covered who was killed by collapse of warehouse which he entered for shelter from violent storm). See, also, *Industrial Commission* v. *Carden*, 129 Ohio St. 344 (coverage granted to employee equipped with steel shovel and struck by lightning), and *Barrett Division* v. *Owens*, 110 Ohio App. 316 (coverage granted to employee who slipped on layer of snow covered ice in depression in sidewalk of employer's premises leading to parking lot). In view of the later cases, it may be that *Walborn* rests upon a ground no more secure than that which caused the claimant's unfortunate injury in that case.

We believe the law was correctly applied in *Krovosucky* v. *Industrial Commission, supra* (74 Ohio App. 86) (coverage granted to employee who tripped over icy rut in employer's parking lot across the highway from actual place of duty). The judgment of the Court of Appeals in this case is, therefore, reversed and the judgment of the Court of Common Pleas affirmed.

*Judgment reversed.*

Taft, C. J., Matthias, O'Neill, Herbert and Brown, JJ., concur.

Zimmerman, J., dissents.