JOURNAL ENTRY AND OPINION.
{¶ 1} This is an appeal from an order of Judge Nancy A. Fuerst that granted summary judgment to the Convention Visitors Bureau of Greater Cleveland ("CVB") and the Administrator of the Bureau of Workers' Compensation ("BWC") on Karen Caponi's claim for workers' compensation. Caponi claims that whether her injuries were sustained in the scope of her employment was a material issue of fact in dispute. We reverse and remand.
 {¶ 2} From the record we glean the following: On February 12, 1999, less than a month after she began work as a corporate sales manager for the CVB, Caponi participated in "Heartland Travel Showcase," an event designed to solicit business from motorcoach companies that organize tour groups, held at a banquet facility in the Powerhouse complex in Cleveland's Flats. She arrived early to help prepare, participated in the event, stayed to help clean when it ended, and then went to a bar elsewhere in the complex where other CVB employees were meeting. While the CVB claims that the meeting at the bar was only a social gathering, Caponi testified that she believed she was attending a required meeting to discuss the event and its results.
 {¶ 3} It was snowing when she left the bar to walk to her car and, when she stepped into a snow-covered pothole in the parking lot, she fell and sustained serious injuries to her arm. She filed a workers' compensation claim which was denied, as were her administrative appeals, and she appealed the ruling to the common pleas court.[1] The judge found that the injury "did not occur within the zone of employment and there is no causal connection between the injury and employment[,]" and granted summary judgment to the CVB and the BWC.
 {¶ 4} Caponi's sole assignment of error challenges the ruling that, as a matter of law, she failed to show a causal connection between her employment and her injury. We review a grant of summary judgment de novo using the same standard as the trial judge, which requires that we consider the evidence in the light most favorable to the non-moving party to determine whether a material dispute of fact exists.[2] Although the CVB cites evidence to show that Caponi knew she was not required to meet the other employees at the bar after the Heartland event, her testimony and affidavits can be viewed as evidence that she believed the meeting mandatory, at least until she arrived at the bar and learned otherwise.
 {¶ 5} In its brief the CVB cited testimony from Caponi's deposition in a separate lawsuit against Jacob Investments Management Co., Inc., which owned or operated the Powerhouse complex. The CVB quoted a portion of the deposition, as follows:
"Q. Did you have anything else alcoholic to drink at Howl at the Moon?
A. Actually, Dave ordered a round of drinks. I ordered a wine. I drank a quarter of it. I was not required to be there."
 {¶ 6} The CVB's brief emphasizes Caponi's admission that she was not required to be at the bar, but omits the final sentence from Caponi's response to the question. Her full response stated:
A. Actually, Dave ordered a round of drinks. I ordered a wine. Idrank a quarter of it. I was not required to be there. I realizedthat, so I left because I like to try to be home by midnight or so forthe kids because my mom was watching the kids that night.
 {¶ 7} Caponi admitted then, as she does now, that she was not required to attend the meeting at the bar, but her full response in the prior deposition indicates that she did not understand that attendance was optional until sometime after she arrived at the bar. Contrary to the dissent, the prior deposition testimony is not inconsistent with her deposition testimony or affidavit in this case. Therefore, we assume, for purposes of review, that she was injured while walking to her car after completing her employment duties, rather than after attending a social gathering.[3]
 {¶ 8} To be eligible for workers' compensation, a worker must show that an injury occurred both "in the course of" employment and that it "arises out of" that employment.[4] Under the first requirement one analyzes factors of "time, place, and circumstance * * * to determine whether the required nexus exists between the employment relationship and the injurious activity[.]"[5] If an employee's job is performed at a fixed work site, the commute to and from that site normally is not considered within the course of employment.[6] Because a fixed site may be temporary,[7] Caponi admits that this doctrine applies because her job duties did not begin until she arrived at the banquet facility. Nevertheless, because she was walking in the facility's parking lot and had not yet reached her car, she might still be able to show that her commute had not yet begun and that her injury occurred in the course of her employment.[8] Even if the walk to her car was considered part of her coming and going, however, she might still satisfy this requirement because she traveled to the complex as a function of her employer's business.[9] Therefore, Caponi has presented sufficient evidence to withstand summary judgment on this prong of the analysis.
 {¶ 9} The second requirement for eligibility, that the injury arise out of employment, assesses "the causal connection between the injury and the employment."[10] Because of the liberal standard for approving workers' compensation claims,[11] we agree the necessary causal connection is something less than that required to show proximate cause.[12] Although that standard is not clear, the most that need be found is that the injury was foreseeable from the employer's conduct; there is no need, in a worker's compensation case, to find the conduct negligent.[13]
 {¶ 10} The causation requirement here is comparable to that of proximate cause in that it is normally a factual issue and can be determined as a matter of law only where the evidence is found insufficient to allow any reasonable jury to find that cause exists.[14]
While such questions should be argued at the margins to avoid taking legitimate issues from factfinders, there must be a point at which one can safely state that a factual issue is not in a penumbra, but stands solely in light or darkness. In this case, however, the lack of sufficient cause was not so apparent that the judge should have taken the issue from the jury.
 {¶ 11} We first examine whether the totality of circumstances supports a causal connection by analyzing three factors: "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident."[15] If the employee's injury fails this test, causation may still be shown under the "special hazard" exception or by showing that the injury occurred within the "zone of employment."[16] Just as one can be confused by the distinction between "in the course of" and "arising out of" employment,[17] it is not always clear what the special hazard or zone of employment exceptions add to the totality of circumstances analysis. The special hazard exception allows compensation if the employee's injury occurred while he was engaged in some activity not normally encountered by the general public,[18] while the zone of employment exception applies where the employee has no meaningful choice in conduct because of the nature of the employer's policy or premises.[19] Because both of these doctrines concern the control factor of the totality of circumstances test,[20]
they appear to be clarifications of that test rather than exceptions to it. Therefore, although Caponi focuses her argument on the existence of a special hazard, that argument is just a part of the broader question of whether the CVB exercised sufficient control over the time, place, and circumstances of Caponi's injury to satisfy the causation standard.
 {¶ 12} Although Caponi traveled to the Powerhouse complex as a CVB employee, it is unclear whether her zone of employment or, alternatively, the CVB's "zone of control" at that location extended to the complex's parking lot. The CVB might have had actual or constructive control over the banquet facility itself and, having chosen the bar as the site for a meeting, it might have had actual or constructive control over that location (assuming Caponi reasonably believed the meeting was related to her employment). While it is less clear whether the CVB had constructive control over the complex's parking facilities simply because it held an event at a banquet facility in the complex, Caponi has provided evidence showing that she had no legitimate choice but to drive to the complex and enter it through its parking lot. A jury could find it foreseeable that Caponi could not avoid the parking lot and that, therefore, the parking lot was within her zone of employment or was a special hazard that the CVB created when it chose a banquet facility inside the gated complex.[21] The assignment of error is sustained.
Judgment reversed and remanded.
ANTHONY O. CALABRESE, Jr., J., concurs.
COLLEEN CONWAY COONEY, J., dissents (Dissenting opinion attached).
[1] R.C. 4123.512.
[2] Civ.R. 56(C); Stephens v. A-Able Rents Co. (1995),101 Ohio App.3d 20, 26, 654 N.E.2d 1315.
[3] At oral argument, BWC contended that, as soon as Caponi exited the threshold of the banquet facility, she was outside of her employment and that her visit to the bar before leaving the complex was immaterial to the denial of her claim.
[4] Ruckman v. Cubby Drilling, Inc., 81 Ohio St.3d 117, 121,1998-Ohio-455, 689 N.E.2d 917, citing Fisher v. Mayfield (1990),49 Ohio St.3d 275, 277, 551 N.E.2d 1271.
[5] Ruckman, 81 Ohio St.3d at 120.
[6] Id. at 119-120.
[7] Id.
[8] Griffin v. Hydra-Matic Div., Gen. Motors Corp. (1988),39 Ohio St.3d 79, 529 N.E.2d 436, syllabus; Marlow v. Goodyear Tire Rubber Co. (1967), 10 Ohio St.2d 18, 39 O.O.2d 11, 225 N.E.2d 241, syllabus.
[9] Ruckman, 81 Ohio St.3d at 121.
[10] Id. at 121-122, citing Fisher, 49 Ohio St.3d at 277-278.
[11] Fisher, 49 Ohio St.3d at 278.
[12] Stivison v. Goodyear Tire Rubber Co., 80 Ohio St.3d 498,502, 1997-Ohio-321, 687 N.E.2d 458 (Resnick, J., dissenting).
[13] Cf. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 423 N.E.2d 467 (in negligence action standard of proximate cause concerns foreseeability of harm from negligent act).
[14] Ratliff v. Colasurd (Apr. 27, 1999), Franklin App. No. 98AP-504.
[15] Ruckman, 81 Ohio St.3d at 122, citing Lord v. Daugherty (1981),66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, syllabus.
[16] Ruckman, 81 Ohio St.3d at 123.
[17] The Lord factors appear to require analysis of the time, place and circumstances of the injury to determine causation.
[18] Ruckman, supra.
[19] Marlow, 10 Ohio St.2d at 20-22.
[20] MTD Prods., Inc. v. Robatin (1991), 61 Ohio St.3d 66, 69-70,572 N.E.2d 661.
[21] Marlow, supra; Ruckman, 81 Ohio St.3d at 124-125.